UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,              Case No. 19-cr-20484

   v.                            HON. STEPHANIE DAWKINS DAVIS
                                   United States District Judge

D-2   JUSTIN D. COOPER,
        a.k.a. Boo, Just,

        Defendant.
_____

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION FOR REVOCATION OF DETENTION ORDER**
_____

The defendant, Justin D. Cooper, seeks revocation of the detention order. Because Cooper consented to detention, the government agrees, pursuant to the consent order of detention, that Cooper is entitled to a detention hearing. ECF No. 25, PageID.48. Regardless, Cooper should continue to be detained pending trial because he is a danger, and because the claims upon which he argues for release are mistaken.

## BACKGROUND

The grand jury found by probable cause that Cooper and his co-conspirators conspired to steal several hundred pounds of marijuana from a residence in Sanilac County. When those efforts failed, Cooper and his co-conspirators conspired to

1

commit an armed robbery to steal the marijuana. The group put on gloves, covered their faces, armed themselves with firearms, and forcibly entered the victims' residence in an attempt to take the marijuana. As they entered the home, they shot the homeowner in the leg. The homeowner's roommate emerged from a back room and engaged the group in a gun fight. As a result of the gun fight, three people were shot, two of whom died from their wounds. ECF No. 83, PageID.273.

## ARGUMENT

**I. COOPER'S CLAIMS IN SUPPORT OF RELEASE ARE MISTAKEN**

In support of his release, Cooper makes several mistaken claims. First, Cooper claims he was not present at the attempted armed robbery, but if he was, he did not possess a gun or see others with a gun. Second, Cooper claims his attorney cannot visit him at the jail. Lastly, Cooper claims he is at an increased risk of contracting Covid-19 at the jail. The government responds to each of the arguments accordingly.

**A. Cooper was present at the attempted robbery**

Cooper's DNA was found at the crime scene, as was a box of lawn and leaf bags Cooper purchased shortly before the attempted armed robbery. There is no question Cooper was present at the attempted armed robbery.

On November 19, 2017, Cooper and his co-conspirators went to the Marathon Gas Station on Dort Highway in Flint. There Cooper purchased two boxes of "Good

'n Tuff Lawn & Leaf Bags" to be used to carry away the marijuana Cooper and his co-conspirators intended to steal. **Exhibit 1**. Police recovered an identical box of lawn and leaf bags at the crime scene. **Exhibit 2**.

Cooper's co-defendant, Paul Drinkwine, purchased a bag of black t-shirts at the Marathon Gas Station, the sleeves of which the conspirators intended to use to cover their faces during the robbery. **Exhibit 3**. Police recovered a black t-shirt sleeve at the crime scene. **Exhibit 4**. The Michigan State Police Forensic Crime Laboratory concluded with "very strong support" that Cooper's DNA was on the t-shirt sleeve. **Exhibit 5**. Police also seized a pair of gloves near the crime scene. **Exhibit 6**. The Michigan State Police Forensic Crime Laboratory concluded with "very strong support" that Cooper's DNA was on the gloves. **Exhibit 7**.

After purchasing the aforementioned items, Cooper and Drinkwine got into the same vehicle. Surveillance video from the Marathon Gas Stations shows that vehicle entering the eastbound ramp to Interstate-69 after leaving the gas station. Cellular location data from Drinkwine's phone during the time leading up to the attempted armed robbery shows Drinkwine's phone interacting with various cell towers along Interstate-69 and near the crime scene. **Exhibit 8**. There is no doubt Cooper was present at, and participated in, the attempted armed robbery.

Moreover, Cooper's claim that even if he was at the attempted armed robbery, that he did not have a gun nor see any of his co-conspirator's with a gun is simply

not believable. As Cooper and his co-conspirators kicked in the door of the residence they shot the homeowner in the leg and engaged in a gun fight with the homeowner's roommate. As a result, three people were shot, two of whom died.

### B. Cooper's attorney can visit him at the jail

Despite the pandemic, Cooper's attorney has the opportunity to visit Cooper at the jail. Communications with Genesee County Jail Administrator Captain Jason Gould reveal that Genesee County Jail did not suspend attorney visits during the pandemic. In fact, attorneys can meet with their clients in person or by video. **Exhibit 9**.

### C. Cooper is not at an increased risk of contracting COVID-19 at the jail

Cooper has not alleged that he has contracted COVID-19, or that he has even been exposed to any individuals with COVID-19 in the Genesee County Jail where he is currently housed. Cooper has also failed to allege any specific personal factors that would place him at a higher risk of severe illness from COVID-19. Nor does Cooper appear to fall within an established category of individuals at high risk of developing severe illness from a COVID-19 infection. The Genesee County jail has no current known cases of any inmate positive for COVID-19. In fact, the Genesee County Jail has *never* had an inmate with COVID-19 in the jail. **Exhibit 10**. The jail instituted a number of precautionary measures to mitigate the risk of contracting the virus.

Cooper's speculative concerns about possible future transmission in the jail should not be permitted to overwhelm the careful balance of factors prescribed by Congress in determining whether he is properly subject to pretrial detention. *See United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *2 (D. Md. Mar. 17, 2020) (rejecting similar argument, and noting that "as concerning as the COVID-19 pandemic is," the court's consideration "must in the first instance be an individualized assessment of the factors identified by the Bail Reform Act.").

The government is mindful that COVID-19 is a serious public health concern and understands Cooper's generalized fear. But courts routinely deny motions when the concern of contracting COVID-19 is generalized. *See*, *e.g.*, *United States v. Tubbs*, Case No. 20-20161, ECF No. 23, PageID.239, 2020 WL 1898842 (E.D. Mich. April 15, 2020) ("[T]he Court finds Defendant's generalized concerns about the risk of contracting the virus do not warrant his release pending trial under either § 3142 or § 3145(c) in light of the record in this matter."); *United States v. Clark*, ___ F. Supp. 3d ___, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020) ("The court is mindful of the unprecedented magnitude of the COVID-19 pandemic and the extremely serious health risks it presents. But, in that context, a defendant should not be entitled to temporary release under § 3142(i) based solely on generalized COVID-19 fears and speculation."); *United States v. Ramadan*, No. 17-20595, 2020 WL 2301365, at *5 (E.D. Mich. May 7, 2020).

Cooper is currently in a safe environment and has alleged no conditions that place him at an increased risk of severe illness from COVID-19.

## II. ANALYSIS

### A. Standard of Review

The Bail Reform Act of 1984 provides that a court shall order a defendant detained pending trial if "no condition or combination of conditions will reasonably assure the appearance of defendant and the safety of any person and the community." 18 U.S.C. § 3142. Specifically, 18 U.S.C. § 3142(e)(1) explains that if, after a hearing, the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of defendant and the safety of any person and the community, the judicial officer shall order the detention of the person before trial. The finding of dangerousness must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f)(2)(b).

### B. 18 U.S.C. § 3142(g) Factors

In making a determination as to whether there are conditions of release that will reasonably assure the safety of any other person and the community, the court must consider certain factors. The factors are (1) the nature and circumstances of the offense charged, including whether the offense involved a firearm; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family ties,

employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning court proceedings; and whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

### 1. Nature and Circumstances of the Offense Charged

As set forth above, and in the second superseding indictment, Cooper participated in an attempted armed robbery where three people were shot, two of whom died from their wounds. ECF No. 83, PageID.273.

### 2. Weight of the Evidence

The weight of the evidence against Cooper refers to the weight of evidence of dangerousness, not the weight of evidence of Cooper's guilt. *United States v. Stone*, 608 F.3d 939, 948 (6th Cir.2010). Given the use of firearms during the attempted armed robbery, and the fact that two people died, the weight of evidence that Cooper is a danger to the community is strong.

Moreover, conspiracy to possess with intent to distribute more than 100 grams of marijuana, and using or carrying a firearm during and in relation to a drug trafficking crime and a crime of violence, both carry a presumption in favor of

detention. When a "judicial officer finds that there is probable cause to believe" that a defendant committed a controlled substance offense with a maximum punishment of more than one year, or an offense under 18 U.S.C. § 924(c), there is a presumption in favor of detention. 18 U.S.C. § 3142(e)(3). "Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community[.]" *Id.*

The resulting presumption in favor of detention imposes a "burden of production" on the defendant, and the government retains the "burden of persuasion." *Id.* A defendant satisfies his burden of production when he comes forward with evidence that he does not pose a danger to the community or a risk of flight. *Id.* Even when a defendant satisfies his burden of production, however, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Id., citing United States v. Mercedes*, 254 F.3d 433, 436 (2nd Cir.2001).

### 3. History and Characteristics of Defendant

#### a. Prior Law Enforcement Contact

Cooper is 29 years old and has three prior felony arrests. Cooper's first arrest occurred in 2013 and resulted in Cooper being charged with deliver of marijuana. *People v. Justin D. Cooper*, 67th Dist. Ct., Case No. 13-715FY. This charge was

8

ultimately dismissed following Cooper's second arrest several weeks later.

Cooper's second arrest resulted in Cooper being charged with delivery/manufacture of a controlled substance less than 50 grams and assaulting/resisting/obstructing a police officer. *People v. Justin D. Cooper*, 67th Dist. Ct., Case No. 13-715FY. Cooper later pleaded guilty to amended charges of possession of a controlled substance less than 25 grams and attempted assaulting/resisting/obstructing a police officer. Cooper was subsequently placed on probation under the Holmes Youthful Trainee Act or M.C.L. § 333.7411.

Cooper's third arrest occurred in 2018, several months after the instant offenses. On July 19, 2018, officers with the Flint Area Narcotics Group (FANG) executed a search warrant at Cooper's residence. The officers seized cocaine packaged for sale, a .40 caliber semi-automatic pistol loaded with a round in the chamber, and 10 counterfeit $100 bills. Cooper was subsequently charged with possession with intent to distribute a controlled substance less than 50 grams. This matter is currently pending Michigan's 67th District Court. It appears from the docket that Cooper is designated to receive no bond when arraigned.

      **b.    Gang Association**

The FBI has informed the government that based upon information from confidential human sources and other law enforcement officers, Cooper is associated with the East Side Crips street gang in Flint. The East Side Crips is violent

neighborhood-based street gang that operates on Flint's east side. Photographs from Cooper's Facebook account corroborate this association. **Exhibit 11**. The photographs show Cooper with several individuals known to be East Side Crips gang members. Sam Burch is currently serving a life sentence for first degree murder and weapons offenses. Davee Cooper, believed to be a high ranking member of the East Side Crips, is serving 10 to 15 years in state prison for second degree murder and 168 months in federal prison for firearm and drug offenses.

### c. Employment History

Despite being 29 years old, Cooper's employment history is scant. For the six months prior to his arrest on the instant charges, Cooper informed Pre-Trial Services that he worked on cars at his home for cash. Before that, Cooper had not worked since 2017 when he worked for six to seven months for Michigan Truss. Cooper also reported that he built grain bins for a friend during a three year period beginning in 2014.

### 4. Nature and Seriousness of the Danger Posed

As to the last factor, the nature and seriousness of the danger to any person or the community that would be posed by the person's release, Cooper does not fare any better. As set forth above, Cooper participated in an attempted armed robbery where three people were shot, two of whom were killed. The seriousness of this offense cannot be overstated. Not only does the government have generalized

concerns for the danger Cooper would pose to the community at large, the government has specific concerns for the danger Cooper would pose to the victims of the attempted armed robbery who will be witnesses in Cooper's upcoming trial. Moreover, as a result of Cooper's commission of felony murder, Cooper's sentencing guidelines, should he be convicted at trial, would be life plus a mandatory consecutive term of 120 months.

Given all of the factors, it is the government's position that no conditions, or combination of conditions, will reasonably assure the safety of the community and the victims. As such, the Court should deny Cooper's request for bond pending trial.

## III. CONCLUSION

For the reasons set forth herein, the government respectfully requests that the Court deny Cooper's request for bond and order Cooper detained pending trial.

                                                Respectfully submitted,

                                                MATTHEW SCHNEIDER
                                                United States Attorney

Dated: August 19, 2020

| | |
|---|---|
| s/ANTHONY P. VANCE | s/JULES M. DEPORRE |
| Assistant United States Attorney | Assistant United States Attorney |
| Chief – Branch Offices | 600 Church Street |
| 600 Church Street | Flint, Michigan 48502-1280 |
| Flint, Michigan 48502-1280 | Phone: (810) 766-5177 |
| Phone: (810) 766-5177 | jules.deporre@usdoj.gov |
| anthony.vance@usdoj.gov | P73999 |
| P61148 | |

s/ANN NEE
Assistant United States Attorney
600 Church Street
Flint, Michigan 48502-1280
Phone: (810) 766-5177
ann.nee@usdoj.gov
P81487

12

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 19, 2020, the foregoing document was electronically filed by an employee of the United States Attorney's Office with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

    All attorneys of record

                               s/ ANTHONY P. VANCE
                               Assistant United States Attorney