UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

   v.

D-2   JUSTIN D. COOPER,
       a.k.a. Boo, Just,

        Defendant.

Case No. 19-cr-20484

HON. STEPHANIE DAWKINS DAVIS
United States District Judge

_____

**GOVERNMENT'S RESPONSE AND BRIEF IN
OPPOSITION TO DEFENDANT'S MOTION FOR
REVOCATION OF DETENTION ORDER**
_____

Justin Cooper participated in a violent and brazen home invasion in an attempt to steal hundreds of pounds of marijuana. After traveling over an hour, Cooper and his accomplices arrived at a residence in Sanilac County that contained a marijuana grow operation. They armed themselves, covered their faces, and approached the home. When they reached the front door, they kicked it open and shot the homeowner as he sat at the dining room table. They then engaged the residents of the home in a gun battle. When the gun battle ended, three people were shot, two of whom died. Cooper and his accomplices then fled the scene empty handed. Cooper is a danger to the community and should be detained pending trial.

**BRIEF**

**I.     BACKGROUND**

The grand jury found by probable cause that Cooper and his accomplices conspired to steal several hundred pounds of marijuana from a residence in Sanilac County. When those efforts failed, Cooper and his accomplices conspired to commit an armed robbery to steal the marijuana. The group traveled to a home in Sanilac County where the marijuana was stored. There they put on gloves, covered their faces, armed themselves with firearms. They approached the front of the home and kicked open the front door. As they entered the home, they shot the homeowner in the leg. The homeowner's roommate emerged from a back room and engaged the group in a gun fight. As a result of the gun fight, three people were shot, two of whom died from their wounds. ECF No. 83, PageID.273.

Cooper is currently charged in the second superseding indictment with (1) conspiracy to possess with intent to distribute 100 kilograms or more of marijuana; (2) conspiracy to interfere with commerce by robbery; (3) attempted interference with commerce by robbery; and (4) using a firearm during and in relation to a drug trafficking crime and crime of violence. ECF No. 83, PageID.273.

If convicted at trial, Cooper's sentencing guideline range would be life, plus at least a 10-year consecutive term of imprisonment.

## II. ANALYSIS

### A. Standard of Review

A magistrate's order for detention may be reconsidered by the district court pursuant to 18 U.S.C. § 3145. Although the statute does not set forth the standard for review, it appears that the district court should make a *de novo* determination of the magistrate's order. The district court should not defer to the magistrate judge's ultimate conclusion, even if "the whole process [in the district court]...[does not] start from scratch, as if the proceedings before the magistrate had never occurred." *United States v. Yamini*, 91 F.Supp.2d 1125, 1128 (S.D.Ohio, 2000) *quoting*, *United States v. Koenig*, 912 F.2d 1190, 1192 (9th Cir.1990). Rather, "the point is that the district court is to make its own 'de novo' determination of facts, whether differed from or an adoption of the findings of the magistrate." *Id.* Thus, under § 3145(b) a district court is not required to engage in a plenary procedure, but some independent review of the magistrate's decision is required. *Id.* In reviewing the appeal, the court "may 'start from scratch' and hold a new hearing or review the transcripts of the proceedings before the magistrate." *United States v. Hammond*, 204 F.Supp.2d 1157, 1162 (E.D.Wis.2002). Where, as is the case here, there was no hearing on the merits, the government agrees that a *de novo* hearing is the proper course of action.

### B. 18 U.S.C. § 3142(e)

The Bail Reform Act of 1984 provides that a court shall order a defendant

3

detained pending trial if "no condition or combination of conditions will reasonably assure the appearance of defendant and the safety of any person and the community." 18 U.S.C. § 3142. Specifically, 18 U.S.C. § 3142(e)(1) explains that if, after a hearing, the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of defendant and the safety of any person and the community, the judicial officer shall order the detention of the person before trial. The finding of dangerousness must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f)(2)(b).

### C. 18 U.S.C. § 3142(g) Factors

In making a determination as to whether there are conditions of release that will reasonably assure the safety of any other person and the community, the court must consider certain factors. The factors are (1) the nature and circumstances of the offense charged, including whether the offense involved a firearm; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning court proceedings; and whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or

4

local law; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

### 1. Nature and Circumstances of the Offense Charged

After having failed on numerous occasions to steal several hundred pounds marijuana from a home in Sanilac County which contained a marijuana grow operation. Cooper and his co-conspirators decided to take the marijuana by force. On November 19, 2017, Cooper and his co-conspirators met at Paul Drinkwine's house to discuss the robbery. Shortly thereafter, they went to the Marathon Gas Station on Dort Highway in Flint. There Cooper purchased two boxes of "Good 'n Tuff Lawn & Leaf Bags" to be used to carry away the marijuana Cooper and his co-conspirators intended to steal. **Exhibit 1**. Police recovered an identical box of lawn and leaf bags at the crime scene. **Exhibit 2**.

Co-defendant Drinkwine purchased a bag of black t-shirts at the Marathon Gas Station, the sleeves of which the conspirators intended to use to cover their faces during the robbery. **Exhibit 3**. Police recovered a black t-shirt sleeve at the crime scene. **Exhibit 4**. The Michigan State Police Forensic Crime Laboratory concluded with "very strong support" that Cooper's DNA was on the t-shirt sleeve. **Exhibit 5**. Police also seized a pair of gloves near the crime scene. **Exhibit 6**. The Michigan State Police Forensic Crime Laboratory concluded with "very strong support" that Cooper's DNA was on the gloves. **Exhibit 7**.

After purchasing the aforementioned items, Cooper and Drinkwine got into the same vehicle. Surveillance video from the Marathon Gas Stations shows that vehicle entering the eastbound ramp to Interstate-69 after leaving the gas station. Cellular location data from Drinkwine's phone during the time leading up to the attempted armed robbery shows Drinkwine's phone interacting with various cell towers along Interstate-69 and near the crime scene. **Exhibit 8**.

After Cooper and his accomplices arrived at the home in Sanilac County, they put on gloves, covered their faces, and armed themselves with firearms. When they reached the front door of the residence, they kicked it in and entered the home. As they entered the home, they shot the homeowner in the leg. The homeowner's roommate emerged from a back room and engaged the group in a gun fight. When the gun fight ended, three people were shot, two of whom died from their wounds. Two co-conspirators were captured shortly thereafter while Cooper and his co-defendants fled the scene empty handed.

Cooper's DNA was found at the crime scene, as was the box of lawn and leaf bags Cooper purchased shortly before the attempted armed robbery. Moreover, Cooper's claim that he did not possess a firearm during the incident is of little consequence. Even assuming that is true, Cooper conspired, and acted in concert, with armed individuals who discharged their guns during the attempted robbery.

6

### 2. Weight of the Evidence

The weight of the evidence against Cooper refers to the weight of evidence of dangerousness, not the weight of evidence of Cooper's guilt. *United States v. Stone*, 608 F.3d 939, 948 (6th Cir.2010). Given the use of firearms during the attempted armed robbery, and the fact that two people were killed, the weight of evidence that Cooper is a danger to the community is extremely strong. Felony murder is particularly dangerous offense.

Moreover, conspiracy to possess with intent to distribute more than 100 grams of marijuana, and using or carrying a firearm during and in relation to a drug trafficking crime and a crime of violence, both carry a presumption in favor of detention. When a "judicial officer finds that there is probable cause to believe" that a defendant committed a controlled substance offense with a maximum punishment of more than one year, or an offense under 18 U.S.C. § 924(c), there is a presumption in favor of detention. 18 U.S.C. § 3142(e)(3). "Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community[.]" *Id.*

The resulting presumption in favor of detention imposes a "burden of production" on the defendant, and the government retains the "burden of persuasion." *Id.* A defendant satisfies his burden of production when he comes

forward with evidence that he does not pose a danger to the community or a risk of flight. *Id.* Even when a defendant satisfies his burden of production, however, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Id., citing United States v. Mercedes*, 254 F.3d 433, 436 (2nd Cir.2001).

### 3. History and Characteristics of Defendant

#### a. Prior Law Enforcement Contact

Cooper is 29 years old and has three prior felony arrests. Cooper's first arrest occurred in 2013 and resulted in Cooper being charged with delivery of marijuana. *People v. Justin D. Cooper*, 67th Dist. Ct., Case No. 13-715FY. This charge was ultimately dismissed following Cooper's second arrest several weeks later.

Cooper's second arrest resulted in Cooper being charged with delivery/manufacture of a controlled substance less than 50 grams and assaulting/resisting/obstructing a police officer. *People v. Justin D. Cooper*, 67th Dist. Ct., Case No. 13-715FY. Cooper later pleaded guilty to amended charges of possession of a controlled substance less than 25 grams and attempted assaulting/resisting/obstructing a police officer. Cooper was subsequently placed on probation under the Holmes Youthful Trainee Act or M.C.L. § 333.7411.

Cooper's third arrest occurred in 2018, several months after the instant offenses. On July 19, 2018, officers with the Flint Area Narcotics Group (FANG)

8

executed a search warrant at Cooper's residence. The officers seized cocaine packaged for sale, a .40 caliber semi-automatic pistol loaded with a round in the chamber, and 10 counterfeit $100 bills. Cooper was subsequently charged with possession with intent to distribute a controlled substance less than 50 grams. This matter is currently pending Michigan's 67th District Court. It appears from the docket that Cooper is designated to receive no bond when arraigned.

### b. Gang Association

The FBI has informed the government that based upon information from confidential human sources and other law enforcement officers, Cooper is associated with the East Side Crips street gang in Flint. The East Side Crips is violent neighborhood-based street gang that operates on Flint's east side. Photographs from Cooper's Facebook account corroborate this association. **Exhibit 11**. The photographs show Cooper with several individuals known to be East Side Crips gang members or associates. Sam Burch is currently serving a life sentence for first degree murder and weapons offenses. Davee Cooper, believed to be a high ranking member of the East Side Crips, is serving 10 to 15 years in state prison for second degree murder and 168 months in federal prison for firearm and drug offenses.

### c. Employment History

Despite being 29 years old, Cooper's employment history is scant. For the six months prior to his arrest on the instant charges, Cooper informed Pre-Trial

Services that he worked on cars at his home for cash. Before that, Cooper had not worked since 2017 when he worked for six to seven months for Michigan Truss. Cooper also reported that he built grain bins for a friend during a three year period beginning in 2014. Looking at Cooper's 2018 arrest, it appears he derives his income from selling drugs and using counterfeit money.

Cooper now claims that he has potential employment doing residential and commercial roofing with Damien Ayala. Cooper, however, does not name the company Ayala is allegedly affiliated with; does not state where this roofing company is located; and does not state in what area this company works. More concerning for the government is Ayala's criminal record and his association with Cooper's co-defendant John Williams.

Ayala has a 2015 conviction for carrying a concealed weapon, and a 2016 conviction for larceny from a person, for which John Williams was a co-defendant. According to court records, Ayala, Williams, and third individual, robbed a man at a gas station on Flint's east side. As the victim got out of his car he was struck in the back of his head with an aluminum bat. The victim fell to the ground and was beaten as the perpetrators demanded his money. As the victim lay on the ground enduring the beating, one of the men kicked him in the face before they all fled. The victim suffered multiple fractures. He was hospitalized and had his jaw wired shut. Ayala, co-defendant Williams, and the third individual were later charged with

armed robbery and assault with intent to murder. Ayala was subsequently convicted of larceny from a person.[1]

The government believes employment with Ayala is not suitable.

### 4. Nature and Seriousness of the Danger Posed

As to the last factor, the nature and seriousness of the danger to any person or the community that would be posed by the person's release, Cooper does not fare any better. As set forth above, Cooper participated in an attempted armed robbery where three people were shot, two of whom were killed. The seriousness of this offense cannot be overstated. Not only does the government have generalized concerns for the danger Cooper would pose to the community at large, the government has specific concerns for the danger Cooper would pose to the victims of the attempted armed robbery who will be witnesses in Cooper's upcoming trial. Moreover, as a result of Cooper's commission of felony murder, Cooper's sentencing guidelines, should he be convicted at trial, would be life plus a mandatory consecutive term of at least 10 years.

Given all of the factors, it is the government's position that no conditions, or combination of conditions, will reasonably assure the safety of the community and the victims.

---

[1] *People v. Damien M. Ayala*, Genesee County Circuit Court, Case No. 15-038192-FC

11

## III. COVID-19 DOES NOT PROVIDE GROUNDS FOR COOPER'S RELEASE

The COVID-19 pandemic does not change the fact that Cooper's release would result in an unreasonable danger to the community. COVID-19 has spread into some jails and prisons, just as it has spread in the broader community. And it is true that the Genesee County jail has experienced an increase in inmates and staff testing positive for COVID-19.

The jail, however, is also taking numerous precautions to reduce the risk of infection. On December 18, 2020, the Jail Administrator, Captain Jason Gould of the Genesee County Sheriff's Office, confirmed the Genesee County Jail's use of the following precautions:

- *Detainees Entering the Facility.* All inmates are quarantined for 14 days. When an inmate arrives at the jail, they are also offered a rapid test. While quarantined, medical staff takes their temperature twice per day and evaluates them. If after 14 days, the inmate has no symptoms, and if tested negative, the inmate is then placed into general population. If an inmate has a positive test, or if they experience symptoms, they are housed on another floor with other positive inmates along with increased medical staff.

- *Staff.* All staff members have their temperature checked and self-report when they come to work. If they develop symptoms, they

12

contact their supervisor. If they are at home – they do not come in. If they are at the jail, they get a test. If they test positive, they are off for 14 days.

- *Sanitation.* Extra cleaning is being done at the jail. The jail has a "wrecking crew" consisting of inmates and deputies who clean the building continuously, particularly commonly touch surfaces. Inmates must wear a mask when they come out of their cell, unless eating. The jail tries to distance inmates as best as possible while eating. All inmates are provided free soap and encouraged to be clean. Jail staff also wears mask inside the jail proper.

- *Medical Care.* Medical staff on-site includes 24 employees: RNs/LPNs/medical assistants/two doctors on staff. At least one RN is on-site at all times.

- *Visitation.* In person visitation has been cancelled. Inmates are encourage to do video visitation. Attorney visits are encouraged to be online, but they do allow in-person socially distanced attorney visits.

- *Programming.* One chaplain is allowed in the jail who represents all faiths. No group services are offered. The only other service

> being offered is New Paths, because they are contracted to do required counseling.
>
> - *Movement of Inmates.* The jail has minimized the movement of inmates and moves them only for operational needs – e.g., the separation of co-defendants, the separation of rival gang members, disciplinary actions, etc.

The Genesee County Jail has implemented these heightened, reasonable precautions to mitigate the risk of COVID-19 spread, in the common interests of both prisoners and staff. The jail's policies to reduce prisoner intake and to enhance screening and cleaning procedures are designed to limit this risk to the greatest extent possible.

Notably, Cooper has not alleged that he has a medical condition which places him at an increased risk for severe illness from COVID-19.

Cooper's proposed solution is certainly no better. Cooper proposes that he live with his mother and that she serve as a third party custodian. Cooper's mother, however, lives alone and works full-time. Thus, Cooper would be alone and unsupervised for large portions of the day.

Cooper has not proffered any evidence that he would be safer if released. But releasing Cooper now would unreasonably risk the safety of the public at a time when law-enforcement resources are stretched thin. Pretrial Services officers would

14

have to closely supervise Cooper's compliance with bond conditions in the community during the COVID-19 outbreak, while themselves operating with limited resources. Cooper's release would come at the worst possible time for street-level law enforcement, whose ranks have been thinned by illness, and who are facing increases in crime caused by people who are under tremendous stress and are largely unable to work or attend school due to safety restrictions. Compared to 2019, non-fatal shootings are up 88% in Flint, while homicides are up 21%.[2]

Simply put, the challenges the community faces during the COVID-19 pandemic make Cooper's potential release even riskier to the community.

## IV. CONCLUSION

For the reasons set forth herein, the government respectfully requests that the Court deny the request of defendant Justin D. Cooper to revoke the order of detention.

                                                Respectfully submitted,

                                                MATTHEW SCHNEIDER
                                                United States Attorney

Dated: December 18, 2020        s/ANTHONY P. VANCE
                                                Assistant United States Attorney
                                                600 Church Street
                                                Flint, Michigan 48502-1280
                                                Phone: (810) 766-5177
                                                anthony.vance@usdoj.gov
                                                P61148

---

[2] Michigan State Police, as of December 13, 2020.

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 18, 2020 the foregoing document was electronically filed by an employee of the United States Attorney's Office with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

    Doug Mullkoff

                                      s/ ANTHONY P. VANCE
                                      Assistant United States Attorney
                                      600 Church Street
                                      Flint, Michigan 48502-1280
                                      Phone: (810) 766-5177
                                      Fax: (810) 766-5427
                                      anthony.vance@usdoj.gov
                                      P61148